Douglas M. ERICKSON, Relator,

v.

SUPER VALU, Respondent,

and

Commissioner of Economic Security, Respondent.

No. C0–83–1602.

Court of Appeals of Minnesota.

Feb. 8, 1984.

Douglas M. Erickson, pro se.

John C. Zwakman, Pamela R. Saunders, Dorsey & Whitney, Minneapolis, for Super Valu.

Hubert H. Humphrey, III, Atty. Gen., Paul N. Heckt, Sp. Asst. Atty. Gen., St. Paul, for Commissioner of Economic Security.

Considered and decided by PARKER, P.J., WOZNIAK, J., and POPOVICH, C.J., with oral argument waived.

## OPINION

PARKER, Judge.

This appeal arises from an order of the commissioner's representative denying an application for reconsideration of a decision of an appeal tribunal. The appeal tribunal found that Douglas Erickson was discharged from his employment for misconduct. Therefore, the appeal tribunal held that Erickson was disqualified from receiving unemployment compensation benefits. Erickson was also told to repay the benefits that he had received between the time a claims deputy found that he was not disqualified and the time the appeal tribunal held that he was disqualified. Erickson contends that the determination of the appeal tribunal was made as a result of a nondisclosure of material fact and thus should be reconsidered.

Douglas Erickson was employed as a driver by Super Valu from June 2, 1980, to June 24, 1982. Erickson's union, 544 Teamsters, went on strike on June 5, 1982. On June 7, 1982, strikers, including Erickson, were milling around the main gate to Super Valu's warehouse. Police stopped a truck at the gate. A policeman saw Erickson throw an object in front of the truck. Another policeman retrieved the object, which was an eight-inch piece of rubber stripping studded with seven 1½-inch roofing nails. The officer confronted Erickson, who denied throwing the rubber strip. The officer arrested Erickson. Erickson then took off his jacket and gave it to someone in the crowd who passed it along. Erickson said that he wanted someone to take care of his motorcycle and that the keys

were in the jacket pocket. The first officer got the jacket. In the jacket pockets, there were 25 to 30 roofing nails similar to the ones found in the rubber strip. Similar nails were found all through the day around the main gate.

Erickson was suspended and then discharged by Super Valu. Erickson made a claim for unemployment benefits on June 25, 1982, and disclosed that he was discharged for misconduct during a strike. A form asking for separation information was sent to Super Valu. Super Valu returned the form to the Department of Economic Security. Super Valu made no claim that Erickson was separated for any reason other than lack of work. A claims deputy determined that Erickson was not disqualified from receiving benefits. The deputy noted that he had asked Super Valu for substantiation of the claim of misconduct but he had received no response.

Super Valu appealed the determination that Erickson was not disqualified. On September 28, 1982, the appeal tribunal reversed the determination of the claims deputy and held that Erickson was discharged for misconduct. Erickson was told to pay back the $2,124 that he had received in unemployment benefits. Erickson was told that an appeal had been made by his attorney. However, an appeal was never made.

On February 25, 1983, Erickson filed an application for reconsideration of the determination of the appeal tribunal. The application requested that the commissioner, *sua sponte*, pursuant to Minn.Stat. § 268.-10, subd. 2(4) (1982), reconsider the determination because it was made as a result of a nondisclosure or misrepresentation of material fact.

Erickson claimed that two Super Valu employees testified at a November 1982 labor arbitration hearing that they saw Erickson picking up nails. Erickson further claimed that this was a material fact which would tend to exonerate him. The commissioner's representative considered Erickson's request for a review to be a motion, and he denied it in an order dated September 19, 1983. Erickson now appeals the decision of the commissioner's representative.

In the memorandum attached to his order, the commissioner's representative gave his reasons for denying reconsideration and stated that Minn.Stat. § 268.10, subd. 2(4), does not provide another appeal procedure. We affirm the commissioner's representative's decision and agree that the cited statute does not provide another appeal procedure.

■ Minn.Stat. § 268.10, subd. 5 (1982), provides for the review of an appeal tribunal decision by the commissioner. In pertinent part, the statute reads: "Within 30 days after mailing of the notice of an appeal tribunal decision to the claimant or employer * * * any such party may appeal from such decision * * *." *Id.*

The Supreme Court has strictly construed statutes relating to the time limits for review of determinations under the Minnesota Employment Services Law. *Fingerhut Corp. v. Department of Employment Services*, 306 Minn. 516, 238 N.W.2d 604 (1976); *Department of Employment Security v. Minnesota Drug Products, Inc.*, 258 Minn. 133, 104 N.W.2d 640 (1960). Thus, an appeal must be dismissed if it is not filed within the statutory time.

■ No appeal was made within the statutory time. Four months after the statutory time for appeal had run, Erickson made an "Application for Reconsideration of Determination and Notice of Appeal." Erickson relied on Minn.Stat. § 268.10, subd. 2(4), as a basis for his application. The statute provides:

At any time within 15 months from the date of the filing of a claim for benefits by an individual, the commissioner *on his own motion may* reconsider a determination of validity made thereon and make a redetermination thereof if he finds that an error in computation or identity or the crediting of wage credits has occurred in connection therewith or if the determination was made as a result of a nondisclo-

sure or misrepresentation of a material fact.

(Emphasis supplied). The commissioner's representative chose to consider Erickson's request and to issue an order. He was not obligated to do so. Minn.Stat. § 268.10, subd. 2(4), makes no provision for anyone other than the commissioner to make a motion. The statute says that the commissioner "may" reconsider a determination. If information is brought to the attention of the commissioner, under Minn.Stat. § 268.10, subd. 2(4), he or she is not obligated to act upon it or respond to it. Minn. Stat. § 268.10, subd. 2(4), does not provide an alternative appeal procedure. The appeal procedure provided by Minn.Stat. § 268.10, subd. 5, satisfies due process requirements.

The commissioner's representative reasoned that the facts which were not previously brought out would not be likely to change the outcome of the case and thus they were not material within Minn.Stat. § 268.10, subd. 2(4). We agree. The testimony might explain why Erickson had nails in his pocket, but it does not refute the eyewitness testimony that he threw the rubber stripping studded with nails in front of a truck.

Erickson also complains that the appeal tribunal told him to pay back the $2,124 that he received in unemployment benefits for the time period prior to the determination by the appeal tribunal that his discharge was for misconduct. It appears by the limited facts available to this court that Erickson should probably not be required to repay those benefits because Super Valu initially made no claim that Erickson was separated for any reason other than lack of work.

Minn.Stat. § 268.10, subd. 1(3)(a), provides in part:

In the absence of fraud, if a redetermination of validity of claim based on an employer's late report subsequently cancels or reduces the amount of benefits to which a claimant was entitled under the initial determination, the claimant shall not be required to make repayment to the fund of any benefits paid to him prior to such redetermination;

There was no fraud on the part of Erickson. In his statement dated June 25, 1982, Erickson said that he was dismissed for misconduct during a strike. The claims deputy made several direct requests to Super Valu, but Super Valu did not respond. The claims deputy found that Erickson was not disqualified and benefits were paid. Since this court may not have all of the pertinent facts on this narrow issue, we remand for a redetermination of whether Erickson must repay the benefits he received.

Affirmed. Remanded for reconsideration of the repayment of benefits only.